UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WINSTON BRIGGS,

                Petitioner,                 Case No. 5:13-cv-10814
                                          Hon. John Corbett O'Meara

v.

KENNETH ROMANOWSKI,

                Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING
PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. §

2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of second degree

murder, MICH. COMP. LAWS § 750.317, felon in possession of a firearm, MICH. COMP. LAWS

§ 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP.

LAWS § 750.227b. As a result, Petitioner was sentenced to 30-to-60 years for the murder

conviction, 2-to-7 years for the felon in possession conviction, and a consecutive two-year

term for his felony-firearm conviction. The petition raises seven claims: (1) insufficient

evidence was presented at trial to sustain Petitioner's convictions, (2) the trial court denied

defense counsel the opportunity to participate in the jury voir dire, (3) Petitioner was denied

the effective assistance of trial counsel, (4) the prosecutor committed misconduct by

arguing facts not supported by evidence during closing argument, and intimidating

witnesses,(5)  the jury was not instructed that it could find Petitioner not guilty of the

charged or lesser offenses, and counsel was ineffective for failing to object, (6) Detroit

Police Lab witnesses lied under oath, and (7) Petitioner was denied the effective assistance of appellate counsel. The petition will be denied because Petitioner's claims are without merit or barred by his procedural default. The Court will also deny Petitioner a certificate of appealability and deny him permission to proceed on appeal in forma pauperis.

I. Background

This Court recites verbatim the relevant facts relied upon by the state trial court in its opinion denying Petitioner's motion for relief from judgment, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On September 27, 2007, Tira Manuel's body was found in her minivan in a vacant field in Detroit. The victim's bare feet were muddy, with blades of grass between her toes, indicating that she had been dragged through a grassy area. Ms. Manuel died of a gunshot wound to the right side of her chest and the trajectory of the bullet revealed that the shooter had been standing to her right. Forensic examination of Ms. Manuel's clothing and body also showed that she had been shot from a distance of no more than three feet. The medical examiner, Dr. Carl Schmidt, determined that Ms. Manuel lost consciousness 20 to 30 seconds after being shot, and died two to three minutes later.

> Ms. Manuel's cell phone records show that she called her friend and defendant's brother, John Briggs, between 3:00 and 4:00 a.m. the morning of September 27, 2007. Defendant and John Briggs lived in a two-family flat on French Road, four or five blocks from the location where Ms. Manuel's body was found. Ms. Manuel possessed a key to John's flat, and she sometimes used it to let herself in.

> Police officers went to the French Road flat to contact John Briggs, who may have been the last person to talk to Ms. Manuel before her death. Several people were at the house when the police arrived. The officers conducted a protective sweep of the premises, and found a handgun. They secured the area while an officer obtained a search warrant. Police found blood stains in the porch area of the French Road flat, but the samples were too small or too degraded for DNA analysis.

Defendant was one of the people present when the officers executed the warrant and searched the French Road flat. In the course of the search, Officer Gary Diaz asked defendant where he had been the night Ms. Manuel was murdered. Officer Diaz testified that defendant "just welled up" and "started tearing up" at this question. Officer Diaz took defendant to his police cruiser and advised him of his *Miranda* rights. Defendant told Officer Diaz that he "didn't mean to do it, it was an accident." Officer Diaz placed defendant under arrest and conveyed him to the southwest district homicide section. While in the police car, defendant revealed to Officer Diaz the location of the weapon. Defendant led the officers to a basement in a burnt-out house and showed them where the gun had been abandoned. A ballistics examiner determined from a comparison test that the bullet that killed Ms. Manuel had been fired from this firearm.

Defendant gave another statement to the police after he was taken to the homicide section, but this statement was not admitted into evidence at trial.

At trial, defense counsel stated in his opening argument that defendant believed that he was acting in self-defense when he shot Ms. Manuel. Counsel stated that defendant and his girlfriend were asleep in the lower flat of the French Road house the night of Ms. Manuel's death. Defense counsel described the flat as not being "the best kind of house," where there were "some activities that may be kind of questionable." Defendant was apprehensive because a "couple of people" had come to the house late at night, and he was concerned that they would return. When Ms. Manuel banged on the door and entered the house with her key at 3:00 a.m., defendant believed that she was an intruder and shot her. Defendant tried to take her to a hospital, but she died before he could get help.

And, though defense counsel made this argument during opening statements, at trial defendant failed to produce any evidence in support of this theory. Defense counsel advised the trial court that defendant's girlfriend, Rachel Patton, was not served a subpoena, but he expected her to appear. He stated that she had come to the court the second day of trial, but she was not present the third day, when she should have testified. He was surprised by her failure to appear. Defense counsel did not call John Briggs. Defense counsel discussed with defendant the implications of testifying or not testifying, and defendant decided not to testify. In closing argument, defense counsel argued that there was reasonable doubt as to whether the shooting was intentional, and emphasized that defendant told Officer Diaz that the shooting was accidental.

*People v. Briggs*, No. 284649, 2010 WL 2076928, at *1-2 (Mich. Ct. App. May 25, 2010)

(footnote omitted).

3

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claims:

I. Mr. Briggs' second-degree murder conviction must be vacated because there was no direct evidence he committed it and the meager circumstantial evidence was too weak, uncertain and speculative.

II. Judge Fresard abused her discretion by conducting voir dire with no input from counsel, resulting in a denial of a reasonable opportunity to determine whether the jurors were subject to challenge.

III. Trial counsel's decision to rest without calling any witnesses to support assertions of accident and self-defense was not sound trial strategy and deprived Mr. Briggs of his Sixth Amendment right to the effective assistance of counsel because it deprived him of two substantial defenses.

IV. The prosecutor committed misconduct and denied Mr. Briggs a fair trial by telling the jury that she "knew" no one called the police after Ms. Manuel was shot and that she "knew" no one sought medical help, even though she had produced no evidence of that in her case.

V. Newly-discovered evidence warrants a new trial if it would make a different result probable. Re-testing of the murder weapon's trigger pull eight months after Mr. Briggs was convicted concluded that it took less pressure to pull the trigger than was claimed at the trial, making a manslaughter verdict more probable.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion but remanded the case to the trial court to correct information in the pre-sentence investigation report. *Briggs*, 2010 WL 2076928, at *6.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising all but the fifth claim presented to the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Briggs*, 790 N.W.2d 396 (Mich. 2010)(table).

4

Petitioner then filed a pro se motion for relief from judgment in the trial court, raising the following claims:

I. Defendant's state and federal constitutional rights to a fair trial by jury were violated when the jury was not given the opportunity to return a general verdict of not guilty or not guilty of the lesser included offenses.

II. Defendant's state and federal constitutional rights to effective assistance of trial counsel were violated when counsel failed to object to improper jury instructions and a defective verdict form, counsel rest without calling any witnesses to support assertions of accident and self-defense which deprived defendant of substantial defenses.

III. Mr. Briggs's second-degree murder conviction must be vacated because there was no direct evidence he committed the murder and the meager circumstantial evidence was too weak, uncertain, and speculative and the evidence was insufficient to support a conviction of second-degree murder where the element of malice was not established by the prosecution which is in violation of U.S. Const. amend. VI, XIV, and Mich. Const. 1963 art. I, sec. 17.

IV. Defendant Briggs state and federal constitutional rights were violated where the prosecutor committed misconduct by injecting her personal opinion about defendant's guilt, threatened and intimidated defense witnesses not to testify and shifted the burden of proof, which violated defendant's U.S. Const. Amd. VI, XIV; Mich. Const. 1963 art I, sec. 17.

V. Defendant's state and federal due process rights were violated when an audit of the Detroit Police Crime Lab revealed that prosecution's witness lied under oath concerning amount of pressure it took to fire gun used in crime.

VI. Defendant's Sixth Amendment right to the effective assistance of appellate counsel were violated when appellate counsel failed to raise dead-bang winner (issues I and IV) on direct appeal which could have affected the result, U.S. Const. Amd. IV; Const. 1963 art. I, sec. 20.

The trial court denied the motion for relief from judgment for failure to meet the requirements of Michigan Court Rule 6.508(D)(3), and denied relief with respect to the claims that were raised in his direct appeal and his motion under Michigan Court Rule 6.508(D)(2), which bars the presentation of claims raised in a prior appeal.

5

After the trial court denied the motion for relief from judgment, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The court denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Briggs,* No. 308766 (Mich. Ct. App. June 19, 2012). Briggs applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Briggs*, 823 N.W.2d 605 (Mich. 2012) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent

6

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's

7

decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

### III. Discussion

A. Sufficiency of the Evidence

Petitioner's first claim asserts that there was insufficient evidence presented at trial to show that he acted with malice when he shot the victim. Specifically, Petitioner asserts that the evidence presented at trial was equally consistent with his theory that he shot the victim in self-defense because he thought the victim was a late-night intruder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with

8

explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

　　"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

　　The evidence presented at trial indicated that the victim was shot at close range. This fact supported the prosecution theory that Petitioner knew who he was shooting. Furthermore, the circumstantial evidence suggesting that Petitioner did not seek medical attention, and instead dragged the victim's body into a field. This constituted circumstantial evidence that she was killed with malicious intent. Given the extremely narrow standard of review for sufficiency of the evidence claims that were adjudicated on the merits by a state court, the court cannot conclude that the rejection of the claim was objectively unreasonable. The claim is therefore without merit.

9

B. Participation in Jury Voir Dire

Petitioner next asserts that he was denied his right to an unbiased jury when the trial court conducted the voir dire of the prospective jurors and did not let the parties participate in the questioning.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is made applicable to the states by the Fourteenth Amendment. *Turner v. Louisiana*, 379 U.S. 466 (1965). Jury voir dire "is designed 'to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003).

"No hard-and-fast formula dictates the necessary depth or breadth of voir dire." *Skilling v. United States*, 130 S. Ct. 2896, 2917, 177 L. Ed. 2d 619 (2010), (citing *United States v. Wood*, 299 U.S. 123, 145-146 (1936)). Supervision of voir dire, for the most part, is left to a trial courts "sound discretion." *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (citation omitted). The exercise of the trial court's discretion is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931). "The Constitution requires only that voir dire be conducted in a manner which ensures fundamental fairness." *Dennis v. Mitchell*, 354 F.3d 511, 524 (6th Cir. 2003).

Here, the trial court's questioning was sufficient to determine whether any juror was potentially biased. The trial court's questions properly sought to reveal whether the potential jurors were unbiased and possessed the ability to fairly render a decision based on the evidence. The trial court instructed the jurors that Petitioner was not obligated to testify, call witnesses, cross-examine prosecution witnesses, or otherwise present a

10

defense. None of the jurors expressed a problem with these principles. Accordingly, the Michigan Court of Appeals reasonably rejected this claim, and Petitioner is not entitled to habeas relief.

C. Ineffective Assistance of Counsel

Petitioner's next claim asserts that he was denied the effective assistance of counsel for his attorney's failure to call defense witnesses and failure to object to the jury instructions and verdict form. With respect to the failure to object to the jury instructions, the allegation is barred from review as explained below.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).

11

"[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

With respect the failure to call defense witnesses. Petitioner did not present the state court with any concrete evidence that the proposed witnesses would have testified in his favor. Rather, Petitioner only presented naked allegations that the witnesses would have supported his self-defense claim. In light of this failure, Petitioner cannot demonstrate entitlement to habeas relief.

Under 28 U.S.C. § 2254(e)(2), if a habeas petitioner "has failed to develop" a factual basis of a claim in state court, he may not expand the record in a habeas proceeding, where there is "a lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence requires that the prisoner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. Although Petitioner requested an evidentiary hearing in his motion to remand filed in the Michigan Court of Appeals, the request was not made in "the manner prescribed by state law." Michigan Court Rule 7.211(C)(1) requires that a motion for remand be supported by an affidavit or offer of proof regarding the facts to be established at a hearing, neither of which Petitioner included in his application. See

12

Michigan Court Rule 7.211(C)(1).

Furthermore, the Supreme Court recently held: "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen v. Pinholster*,    U.S.    , 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011). Based on the existing record, Petitioner cannot support his claims because there is no evidence that the uncalled witnesses would have benefitted his defense.

Considering the deferential standard of review for claims adjudicated on the merits in the state court, Petitioner has not demonstrated entitlement to habeas relief based on his ineffective assistance of counsel claims. As recently explained by the Supreme Court, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland.* The opinion of the state courts, at a minimum, present a "reasonable argument" that Petitioner was not denied the effective assistance of counsel. Accordingly, the Court finds that the state court's adjudication of Petitioner's ineffective assistance of counsel claims was not contrary to, nor did it involve an unreasonable application of, the clearly established Supreme Court standard.


D. Prosecutorial Misconduct

Petitioner next claims that the misconduct of the prosecutor denied him a fair trial. Specifically, Petitioner contends that the prosecutor told the jury that Petitioner did not seek medical help or inform the police of the location of the body despite a lack of evidence

13

supporting that assertion. Petitioner made several other allegations of prosecutorial misconduct in his motion for relief from judgment, but those claim are barred from review as indicated below

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.    , 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Even if a comment unfairly suggested to the jury that a defendant is required to present evidence, any unfair prejudice is ameliorated by a court's instruction that the lawyers' comments and statements are not evidence. See *Hamblin v. Mitchell*, 354 F. 3d 482, 495 (6th Cir. 2003). Jurors are presumed to follow the court's instructions. See *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Here, there was no evidence presented that no one called for assistance regarding the shooting. However, an officer testified that she was dispatched to the vacant lot where the victim was found. The officer indicated that she was dispatched during the day shift, which would have been hours after the shooting. From this testimony, a reasonable inference could be drawn that the police were not notified until several hours after the

14

shooting, and therefore that no one had notified the authorities about the shooting for some time. Even if Petitioner notified the authorities, this would not change the fact that the victim's body had been dumped in the field. This evidence undermines any claim that assistance was sought. Furthermore, the trial court's instructions regarding arguments by the attorneys ameliorated any prejudice. Therefore, the state court reasonably adjudicated this claim, and Petitioner has not demonstrated entitlement to habeas relief.

E. Procedurally Defaulted Claims

Petitioner's remaining claims, including the portions of his ineffective assistance of counsel claim and prosecutorial misconduct claim referred to above, were first raised in his motion for relief from judgment filed in the trial court. The trial court denied relief with respect to these claims, in part, because Petitioner did not explain his failure to raise these claims in his appeal of right, as required by Mich. Ct. R. 6.508(D)(3). As a result the adjudication of these claims rested on Petitioner's failure to comply with a state procedural rule, and it bars review of his claims in this action.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a

15

constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply the presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that Petitioner failed to meet the burden of establishing entitlement to relief under Rule 6.508(D). These orders did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the court must look to the trial court's opinion. See *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). The trial

16

court's opinion found that Petitioner's claims were barred by Rule 6.508(D)(3). Accordingly, the state courts relied upon a procedural rule to deny relief.

To the extent that the trial judge also discussed the merits of Petitioner's claims in addition to invoking the provisions of Rule 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. See *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991) ("[A] federal court need not reach the merits of a habeas petition where the last state-court opinion clearly and expressly rested upon procedural default as an alternative ground."); *Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999) ("[T]he fact that the trial court briefly discussed the merits of the claim as an alternative basis for denying the motion does not alter th[e] conclusion [that the petitioner's claim was procedurally barred by Mich. Ct. R. 6.508(D)(3)]."). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee*, 929 F. 2d at 267. Petitioner's claims are therefore barred from review.

In Petitioner's final claim, he argues that his appellate counsel's failure to raise his claims satisfy the "good cause" requirement and excuses his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes*, 463 U.S. 745, 751 (1983). For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard. *Id.* at 754.

17

Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Id.* 753.

Notwithstanding *Barnes*, it is possible to raise a claim of attorney error "based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F. 3d 568, 579 (6th Cir. 2002).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed an appellate brief which raised the first two claims that Petitioner has presented in his petition. Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable. For the reasons stated by the trail judge in rejecting petitioner's post-conviction claims, none of the claims raised by Petitioner in his post-conviction motion were "clearly stronger" than those raised on direct appeal. Accordingly, Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. See *McMeans v. Brigano*, 228 F. 3d 674,

682-83 (6th Cir. 2000) (holding that "while a different lawyer might have done otherwise, the decision of the petitioner's appellate counsel not to assert his Confrontation Clause claim was not unreasonable and [does not violate the petitioner's Sixth Amendment rights]" where the Confrontation Clause arguments was not a "dead bang winner"). Because Petitioner failed to establish good cause, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Furthermore, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. The Supreme Court has held that, "if a habeas petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to . . . argue the merits of his underlying claims.'" *Reeves v. Fortner*, 490 F. App'x 766, 769 (6th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). "In order to establish actual innocence, the petitioner 'must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup*, 513 U.S. at 327). "The Supreme Court has cautioned that the actual innocence exception should 'remain rare' and 'only be applied in the extraordinary case.'" *Id.* (quoting *Schlup*, 513 U.S. at 327).

Petitioner is therefor not entitled to habeas relief based on his defaulted claims.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated

19

a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not

debate this Court's resolution of Petitioner's claims, and will therefore deny a certificate of

appealability. The Court will also deny Petitioner permission to proceed on appeal in forma

pauperis because any appeal of this decision would be frivolous.

V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas

corpus.

The Court further **DENIES** a certificate of appealability, and **DENIES** permission to

proceed on appeal in forma pauperis.

**SO ORDERED.**


s/John Corbett O'Meara
United States District Judge


Date:  December 11, 2014


I hereby certify that a copy of the foregoing document was served upon the parties
of record on this date, December 11, 2014, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager